**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jeff H., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 23-21384 (SDW) <br><br> **OPINION** <br><br> August 20, 2024 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Jeff H.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge ("ALJ") Randolph E. Schum's ("ALJ Schum" or "the ALJ") denial of Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified in this opinion only by his first name and last initial, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.    **BACKGROUND**

    A.  **Procedural History**

On September 17, 2020, Plaintiff applied for DIB, (D.E. 4–5, Administrative Record ("R.") at 244–45), alleging disability beginning on January 1, 2008, ("onset date"), due to back and right leg pain, depression, and post-traumatic stress disorder ("PTSD"). (R. 56.) The Social Security Administration ("SSA") initially denied Plaintiff's application on December 17, 2020, and upon reconsideration on June 11, 2021. (R. 126–130, 139–145.) ALJ Schum held an administrative hearing via telephone on January 11, 2022 (R. 32–54), where Plaintiff amended his onset date to March 27, 2011 ("amended onset date"). (R. 52.) The ALJ found that Plaintiff last met the insured status requirement of the Social Security Act on December 31, 2012 ("date of last insured"). (R. 22.) On March 30, 2022, the ALJ issued a written decision denying Plaintiff's application and found that Plaintiff was not disabled from the amended onset date to the date of last insured. (R. 19–27.) The Appeals Council denied review on April 14, 2023 (R. 5–10), making the ALJ's decision the Commissioner's final determination. *See* 20 C.F.R. § 416.1455. Plaintiff thereafter timely filed the instant appeal in this Court, and the parties completed briefing. (D.E. 9; D.E. 14.)

    B.  **Factual History**

        i.  *Medical Record*

From 1997 to 2007, Plaintiff was employed by CMS Services. (R. 36.) Plaintiff worked "handling the distribution, inventory, assembly, and repair" of credit card equipment, and as an executive vice-president of operations. (R. 36–37.) In 2003, Plaintiff was involved in a boating accident, after which he underwent six surgeries and spent forty-four days in the hospital. (D.E. 9 at 3; R. 38–39, 1848). Plaintiff did not return to work after the accident, and progress notes from

2

Dr. Paul Koenig, M.D., ("Dr. Koenig") indicate that Plaintiff was treated for multiple ailments related to the accident. (R. 41, 1848–64.)

Plaintiff saw Dr. Koenig from August 8, 2002, to June 28, 2011. (R. 1846–63.) At appointments preceding the relevant period, Plaintiff was treated for chronic leg pain, depression, and sleep apnea with mixed results. (*Id.*) Medical records indicate that Plaintiff had anemia, edema, antalgic gait, hypertension, extreme obesity, osteoarthrosis, and depression. (*Id.*)

Plaintiff was treated by Dr. Koenig for various illness and prescribed different medications throughout the relevant period. (R. 1864–66.) On March 29, 2011, Dr. Koenig recorded that Plaintiff had suffered a knee injury and a pain level of eight out of ten. (R. 1864.) Medical records indicate that Plaintiff had chronic skin breakdown and effusion. He was referred to orthopedics and prescribed Diclofenac and Oxycodone. (*Id.*) Dr. Koenig noted that Plaintiff's hypertension was benign, and his dose of Lisinopril was maintained. (*Id.*) At the next appointment with Dr. Koenig, on June 28, 2011, Plaintiff's pain was managed with Oxycodone, and his obesity was recorded as extreme. (R. 1865–66.) At this time, Plaintiff was prescribed Morphine and the option for bariatric surgery was discussed. (*Id.*)

Plaintiff attended La Clinica de la Raza from January 5, 2012, to June 3, 2015. (R. 1106–1473.) On January 5, 2012, Annette Pizano, PA-C, ("PA Pizano") prescribed various medications to treat Plaintiff's benign prostatic hypertrophy, hypertension, and chronic pain. (R. 1119.) PA Pizano noted that Plaintiff's cardiac and pulmonary assessments were normal. (*Id.*) At a follow up on April 30, 2012, Plaintiff was still experiencing knee pain, and he was prescribed more medication and referred to physical therapy. (R. 1129.) On July 9, 2012, Plaintiff was diagnosed with depression and prescribed Prozac. (R. 1134.) On November 6, 2012, Prozac was no longer effective, and Celexa was prescribed as an alternative. (R. 1139.) Medical records from that

3

appointment indicate that Plaintiff had tachycardia and that Plaintiff reported his pain was stable with medication. (*Id.*) At the final appointment during the relevant period, on December 5, 2012, Plaintiff had edema and superficial ulceration, and exercise was recommended. (R. 1140.)

In July, 2019, a Physician's Assistant, Patrick Fink, wrote that Plaintiff was unable to work at that time due to his ailments. (D.E. 334.) In November, 2020, Plaintiff was examined by Dr. R. Weeks, M.D, ("Dr. Weeks") and Dr. N. Haroun, M.D., ("Dr. Haroun") and was diagnosed with dysfunction – major joints, peripheral neuropathy, and depression, bipolar and related disorders. (R. 61.) Dr. Haroun determined there were no medically determinable mental impairments and that there were no objective findings related to physical limitations. The doctors stated that there was insufficient evidence to evaluate Plaintiff's DIB claim for the relevant period. (R. 63.)

On March 24, 2021, Dr. Ernest A. Bagner III, M.D., conducted a complete psychiatric evaluation of Plaintiff and diagnosed him with Major Depressive Disorder and PTSD. (R. 847 & 849.) In June 2021, Plaintiff was examined by Dr. K. Sin, M.D., ("Dr. Sin") and James Brown, Ph.D., ("Dr. Brown") to reconsider the initial findings of Drs. Weeks and Haroun. (R. 79–118.) Plaintiff's diagnoses were the same, and Dr. Brown noted no medically determinable mental impairments. (R. 90.) The report includes a residual functional capacity ("RFC") assessment which notes that Plaintiff can lift ten pounds occasionally and less than ten pounds frequently; can stand or walk for significantly less than two hours in a workday; can sit for about six hours in a workday; can use his lower extremities to push and pull in a limited capacity; can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally; can never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to extreme cold, extreme heat, wetness, and vibration; and should avoid even moderate exposure to hazardous machinery and heights. However, there was insufficient evidence to evaluate functional limitations for the relevant period.

Consistent with these findings, the doctors concluded that Plaintiff is disabled, but disability could only be established beginning on September 17, 2020. (R. 117.)

   *ii. Administrative Hearing*

Plaintiff was represented by counsel at the administrative hearing that was held on January 11, 2022. (R. 32–54.) Plaintiff testified that, during the relevant period, he was overweight, anemic, and that he had a hiatal hernia, PTSD, and asthma. (R. 37–38.) Plaintiff never returned to work after the 2003 boating accident, but he continued to receive his salary until 2007. (R. 41.)

Plaintiff testified to the specific limitations caused by his symptoms. He stated that it is difficult for him to concentrate on tasks, and that he suffers from motivational issues and nightmares. (R. 43.) He testified that he could lift ten pounds, but that he cannot carry weight over any distance. (R. 44.) He cannot sit for long periods of time because his legs would swell. (R. 44–45.) He stated that he received psychiatric care from "various clinician's offices in California." (R. 38.) He continues to have issues related to his right leg, including "chronic, serious pain" and right drop foot. (R. 39–40.) Plaintiff used a cane and walker at the time of the hearing. (R. 41.)

A Vocational Expert ("VE") testified that if Plaintiff can lift fifty pounds occasionally and twenty-five pounds frequently; can lift twenty pounds occasionally and ten pounds frequently; can stand for six hours out of eight and sit for at least six; avoid climbing ropes, ladders, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to fumes, odors, dust and gases, unprotected heights, and moving dangerous machinery, then the Plaintiff can return to past relevant work. (R. 48.)

The VE also testified that if Plaintiff were limited to two hours of walking and standing in an eight-hour workday, and lifting twenty pounds occasionally and ten pounds frequently, Plaintiff

5

would not be able to return to work as an office machine servicer. (R. 49.) The VE also testified that if the Plaintiff were limited to sedentary work, he could not return to past relevant work, but he could perform the job of telephone solicitor in his industry. (*Id.*) However, if Plaintiff suffered from alleged concentration issues, he would not be able to perform this role. (R. 50.) Plaintiff testified that he never performed any sales work. In response, the VE testified that telephone solicitor would not be a viable job. (R. 51.)

## II.   LEGAL STANDARD

### A. Standard of Review

This Court's review of an ALJ's factual findings is limited to determining whether there is substantial evidence to support his conclusions. 42 U.S.C. § 405(g) ("The findings of the [agency] . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). However, it exercises plenary review of the legal issues decided by the ALJ, *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quotation marks omitted). It is "a term of art used throughout administrative law" and notwithstanding "the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* (quotation marks omitted). "It is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014) (quotation marks omitted). However, a "single piece of evidence 'will not satisfy the substantiality test if the Commissioner ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not

evidence but mere conclusion.'" *Nazario v. Comm'r of Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

### B. The Five Step Disability Test

To make a disability determination, the ALJ follows a five-step, sequential analysis. 20 C.F.R. § 404.1520(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019). The ALJ determines whether the claimant: first, is currently engaged in substantial gainful activity ("SGA"); second, has a "severe" and "medically determinable" impairment; and third, has an impairment or combination of impairments that is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(a)(4)(i), (ii), (iii). Before reaching the fourth step, the ALJ considers the claimant's RFC, i.e., the "most [the claimant] can still do despite [his or her] limitations" in terms of meeting the "physical, mental, sensory, and other requirements of work." *Id.* §§ 404.1520(a)(iv), 404.1545(a)(1), (e). Then, at step four, the ALJ ascertains whether the claimant can still do his or her past relevant work, by comparing his or her RFC to the "physical and mental demands" of that work. *Id.* §§ 404.1520(a)(iv), (f); *see id.* § 404.1560(b)(1) (defining past relevant work). Finally, at step five, the ALJ decides whether the claimant "can make an adjustment to other work," considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v), (g). "The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner." *Hess*, 931 F.3d at 201.

### III. DISCUSSION

#### A. The ALJ's Decision

On March 30, 2022, ALJ Schum issued a decision concluding that Plaintiff was not disabled from the amended onset date to the date of last insured. (R. 16–27.) At step one, the ALJ

7

found that Plaintiff had not engaged in SGA since the amended onset date. (R. 22.) At step two, the ALJ found that Plaintiff had two severe impairments: obesity and a history of right drop foot. (*Id.*) He determined that the alleged PTSD was not a medically determinable impairment because "there was no objective medical evidence that documented that [the PTSD diagnosis] resulted from psychological abnormalities that were demonstrable by medically acceptable clinical or laboratory diagnostic techniques" and that "[t]here were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured." (*Id.*) He also relied on the administrative findings of Drs. Haroun and Brown, both of which found no medically determinable mental impairments. (R. 23.) ALJ Schum also determined that Plaintiff's diagnoses for a hiatal hernia, hypertension, sleep apnea, anemia, and asthma were not severe impairments. (*Id.*) He found that there was an "absence in the record of any diagnostic testing reflective of significant abnormalities or the need for invasive treatment modalities," and that "[t]here was no probative evidence that these impairments more than minimally affected the claimant's ability to perform basic work functions [.]" (*Id.*)

At step three, ALJ Schum determined that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any Listing. (*Id.*) He noted that "the functional limitations caused by the medically determinable impairment of obesity, alone or in combination with another impairment(s), may medically equal a listing[.]" (R. 24.) Accordingly, the ALJ "fully considered obesity in the context of the overall record." (*Id.*)

ALJ Schum then moved to the RFC determination necessary before step four. He determined that the medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that the alleged intensity of the symptoms was inconsistent with medical evidence. (R. 25.) The decision notes a lack of evidence indicating that Plaintiff's

limitations were work preclusive, that Plaintiff was encouraged to exercise, and that he was not prescribed a handheld device, nor was there evidence that he needed one. (*Id.*) The ALJ found the administrative findings of Drs. Weeks and Sin persuasive, but he was not persuaded by the findings of Patrick Fink, who concluded that Plaintiff was not able to work. (R. 25.) After reviewing the record, ALJ Schum found some limitations caused by the symptoms, but that the limitations were less than Plaintiff alleged at the hearing. (R. 25–26.) He concluded that Plaintiff:

> [H]ad the residual functional capacity to perform medium work . . . except [Plaintiff] should never climb ropes, ladders or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to fumes, odors, dust and gases, unprotected heights, and moving and dangerous machinery.

(R. 24.)

At step four, he determined that Plaintiff's past relevant work was as an office machine servicer and sales representative for office machines. (R. 27.) Based on testimony from Plaintiff and the VE, and relying on his RFC determination, ALJ Schum determined that Plaintiff could perform his past relevant work as customarily performed in the national economy. (*Id.*) Therefore, he determined that Plaintiff was not disabled at this step. (*Id.*)

### B. Analysis

On appeal, Plaintiff argues principally that the ALJ's RFC determination is not based on substantial evidence because the ALJ failed to develop the record. (R. 9.) Specifically, he argues that the record did not contain a medical opinion as to the existence or severity of physical limitations during the relevant period. (R. 12.) Plaintiff argues that because the ALJ was able to establish impairments, he was required to obtain a medical opinion to determine the severity, rather than interpreting medical evidence himself. (R. 11.) He avers that the ALJ did not adequately explain his determination that Plaintiff could perform medium work. (R. 14.) Plaintiff then argues

9

that the ALJ failed to pose a hypothetical that reflected the correct RFC to the VE, and this failure affected the VE's testimony so much that it cannot be considered substantial at step four. (R. 15.)

### i. The RFC Determination

ALJ Schum has the exclusive responsibility of making an RFC determination. 20 C.F.R. §§ 404.1545(a) & 404.1546(c); *see Chandler*, 667 F. 3d at 359 ("The ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations."). This is true even when there is no medical opinion which corroborates the ALJ's finding. *See Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 87 (3d Cir. 2015) ("To the extent he suggests that the ALJ was obligated to obtain medical evidence that decides the ultimate question, [Plaintiff] is wrong.").

While the ALJ has the sole responsibility for the determination, he must consider "all relevant evidence." 20 C.F.R § 404.1545. The ALJ also has a duty to develop the record to satisfy the standard of substantial evidence and to resolve inconsistencies in the record. *See Rutherford v. Barnhart*, 399 F. 3d 546, 557 (3d Cir. 2005) (describing the "well-established . . . obligation of an ALJ to develop the record during an administrative hearing."); *Plummer v. Apfel*, 186 F. 3d 422, 434 (3d Cir. 1999) (stating that the ALJ has a duty to "[develop] the record when there is a suggestion of . . . impairment by inquiring into the present status of impairment and its possible effects on the [Plaintiff's] ability to work."). While an ALJ "is not permitted to interpret raw medical data when evaluating a claimant's functional capacity," there is no requirement that the ultimate decision is supported by a medical opinion. *Bylsma v. Kijakazi*, No. 3:20-CV-1377, 2021 WL 4978444, at *8 (M.D. Pa. Sept. 16, 2021); *see Pintal*, 602 F. App'x at 87. The need to rely on medical records from the relevant period does not trigger an obligation to develop the record further with a medical opinion. *Craig M. v. Comm'r of Soc. Sec. Admin.*, Civ. No. 23-3407, 2024

WL 2750880 (D.N.J. May 29, 2024) (stating that the ALJ did not err by interpreting medical data where the ALJ identified clinical notes, medications, and diagnoses in the medical record which speak to the RFC).

Here, ALJ Schum found that Plaintiff had two severe impairments on which to base his RFC determination: obesity and right drop foot. The ALJ was free to reject the medical opinions and find functional limitations during the relevant period, as these limitations clearly existed from other evidence. *See Doty v. Colvin*, No. 13-80-J, 2014 WL 29036, at *1, n.1 (W.D. Pa. Jan. 2, 2014); *see* 20 C.F.R. 404.1520b(c). The ALJ relied on Plaintiff's testimony about his condition during the relevant period, the medical diagnoses, and medical notes and records. He noted that there was no prescription for a handheld assistive device or evidence that Plaintiff needed one; Plaintiff had normal physical findings with the exception of edema, ulceration, and tachycardia; and Plaintiff was treated conservatively, had a good response to medication, and was advised to lose weight. The ALJ conducted a diligent survey of the evidence and the events from the period which speak to the existence of Plaintiff's physical limitations. He pointed to substantial evidence that functional limitations did exist including the medical record and Plaintiff's testimony about how his leg pain and obesity limited his function. Therefore, the ALJ adequately developed the record at the hearing and then outlined "all relevant evidence" he considered in his written decision. 20 C.F.R § 404.1545.

    *ii. Explanation of Determination*

As to Plaintiff's argument that the ALJ did not provide an adequate explanation as to how the evidence supported his conclusion that Plaintiff could perform medium work, to allow for meaningful judicial review, an ALJ must adequately consider and assess the persuasiveness of relevant medical evidence, and explain the reasons for his decision, on the record. 42

U.S.C. § 405(b)(1); 20 C.F.R. § 416.920c; *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). "Where there is conflicting probative evidence," there is "a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions," and failure to provide that explanation warrants remand. *Fargnoli*, 247 F.3d at 42.

ALJ Schum explained that he used a two-step process to determine: (i) whether Plaintiff's medically determined impairments could be reasonably expected to produce his alleged symptoms; and (ii) whether the intensity and limiting effect of the symptoms made them work preclusive. After finding that obesity and right drop foot could reasonably produce the symptoms alleged, the ALJ turned to the second step. At this step, the ALJ clearly described the discrepancies in the record as to work preclusion. He then outlined substantial evidence from which he could conclude that the severity of the symptoms is consistent with his given RFC. The ALJ is not required to explain the relationship between the evidence and the determination in any particular way. *See Millard v. Saul*, No. 3:19-cv-00850, 2020 WL 1849719, at *5 (M.D. Pa. Apr. 13, 2020); *Jones v. Barnhart*, 364 F. 3d 501, 505 (3d Cir. 2004) (stating that an ALJ need not "use particular language or adhere to a particular format in conducting his analysis"). Because the decision identifies the discrepancies in the evidence and which evidence led to the determination, this Court is satisfied that the ALJ's explanation is adequate for meaningful judicial review.

### iii. VE's Testimony

Finally, as to Plaintiff's argument that the ALJ failed to pose a sufficient hypothetical to the VE because the RFC determination was deficient, ALJs must pose a hypothetical that includes all credibly established limitations experienced by a claimant. *See Burns v. Barnhart*, 312 F. 3d 113, 123 (3d Cir. 2002) ("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's

opinion is not considered substantial evidence."). However, an ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford*, 399 F. 3d at 554. Instead, the ALJ must pose "all of a claimant's *credibly established limitations*." *Id*. (emphasis in original).

The ALJ posed two hypotheticals to the VE, which established that a person with Plaintiff's RFC would be able to perform his past relevant work. Importantly, the limitations included in the hypothetical were not undisputed. Because the RFC determination is supported by substantial evidence in the record and reflected in the hypothetical, this Court finds the VE's testimony to be substantial at step four.

**IV.    CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk  
cc:     Parties